IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SAMUEL NOAH KEONI LEVITZ,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK NATIONAL ASSOCIATION,<br><br>Defendant. | Case No. 24-cv-00024-DKW-KJM<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS; (2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER; AND (3) DISMISSING AMENDED COMPLAINT WITH LIMITED LEAVE TO AMEND** |

In an Amended Complaint, Plaintiff Samuel Noah Keoni Levitz (Levitz or Plaintiff), proceeding without counsel, brings various claims against Defendant PNC Bank National Association (PNC or Defendant), appearing to arise from a mortgage loan he received from PNC to purchase a property in Hale‘iwa, Hawai‘i ("Property"), and PNC's subsequent attempts to foreclose on the Property in Hawai‘i State court.   More specifically, Levitz's claims include, among others, efforts to "quiet title" in the Property and "void" the mortgage, as well as alleged violations of federal statutes, such as the Fair Credit Reporting Act (FCRA), the Truth in Lending Act (TILA), the Real Estate Settlement Procedures Act (RESPA), and the Fair Debt Collection Practices Act (FDCPA).

In addition, after previous failed attempts, on October 17, 2024, Levitz filed a third motion for temporary restraining order ("TRO Motion"), seeking to prevent

PNC from "taking foreclosure actions" with respect to the Property.   Dkt. No. 37.

Less than a week later, PNC moved to dismiss this entire case on various grounds,

including under the *Rooker-Feldman* doctrine, res judicata, and failure to state a

claim.   Dkt. No. 43.

  With the time for briefing now complete, it is clear that the vast majority of

Levitz's claims must be dismissed on the grounds of either *Rooker-Feldman* and/or

res judicata (or both).   This is because, in certain claims, Levitz seeks to have this

Court ignore or overturn rulings in the State court foreclosure action (*Rooker-*

*Feldman*) and, in others, he raises matters that were or could have been raised in

the State court foreclosure action (res judicata).   The only possible exceptions are

claims arising under the FCRA, the RESPA, and the FDCPA.   As alleged, and

liberally construed, those claims may involve matters that were not or need not

have been raised in the State court foreclosure action.   Even so, those claims still

fail as they each fall far short of alleging a plausible claim.   Because those

deficiencies may be cured by amendment, however, the Court will allow Levitz an

opportunity to do so, to the extent set forth herein.   Therefore, for the reasons

more fully set forth below, PNC's motion to dismiss is GRANTED, but Levitz is

permitted limited leave to amend his FCRA, RESPA, and FDCPA claims only.

Further, as Levitz has failed to show a likelihood of success with respect to any of his claims, the TRO Motion is DENIED.

## BACKGROUND

On January 17, 2024, Levitz initiated this action with the filing of a Complaint against PNC and various unidentified insurers, investors, and/or trustees of PNC and/or an unidentified special purpose vehicle (or "SPV") (collectively, Defendants). Dkt. No. 1. Approximately two weeks later, after the denial of a motion for an emergency injunction, Levitz filed the operative Amended Complaint. Dkt. Nos. 10-11. Therein, Levitz alleged that PNC "improperly securitized" the mortgage on his Property in order to "obscure" ownership and "avoid legal obligations" to Levitz. Levitz alleged the following claims against the Defendants: (1) for quiet title of the Property, arguing that the mortgage was "unenforceable"; (2) for declaratory relief as to the enforceability of the mortgage; (3) violation of the FCRA related to Defendants reporting "negative information" on Levitz's credit report; (4) violation of the TILA related to Defendants failing to provide "necessary disclosures" during the origination of the mortgage and its securitization; (5) violation of the RESPA related to Defendants' actions in "servicing the mortgage"; (6) violation of the FDCPA related to Defendants' attempts to "collect on the mortgage"; (7) breach of contract in Defendants "failing

to adhere" to the terms of the mortgage; (8) negligence related to the Defendants'
"handling of the mortgage servicing and securitization process"; and (9) fraudulent
misrepresentations by PNC related to the servicing, management, and
securitization of the mortgage.

On October 17, 2024, after a second unsuccessful attempt at seeking an ex
parte restraining order, Levitz filed the pending third TRO motion.   Dkt. Nos. 21,
37.   Therein, Levitz sought to enjoin PNC from "any foreclosure actions, eviction
proceedings, or any activities" related to the Property, arguing that PNC did not
have "legal standing to foreclose" on the Property because it had failed to produce
the original promissory note.

On October 21, 2024, PNC filed the pending motion to dismiss all claims in
this action.   Dkt. No. 43.   PNC asserts that, prior to filing this case, Levitz entered
into and subsequently defaulted on a mortgage, resulting in PNC commencing a
foreclosure proceeding in 2014 in State court.   According to PNC, in February
2023, the State court granted PNC summary judgment and, thereby, issued a
decree of foreclosure and order of sale with respect to the Property—something
that Levitz did not appeal.   PNC argues that, as a result, Levitz's claims should be
dismissed for various reasons.   First, PNC argues that Levitz's claims are barred

by the *Rooker-Feldman*[1] doctrine because they are "inextricably intertwined" with the State court's decree of foreclosure and order of sale.   Second, PNC argues that the claims are barred by principles of res judicata, specifically, privity of the parties, existence of a final judgment, and claims that could have been brought in the State foreclosure action.   Finally, PNC argues that each of Levitz's claims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The Court scheduled both of these pending motions for hearing on November 26, 2024.   Dkt. Nos. 40, 45.   As a result, pursuant to Local Rule 7.2, responses to the same were due on or before November 5, 2024, and replies in support were due on or before November 12, 2024.   As of the date of this Order, the Court has received just one additional brief.   Specifically, on November 5, 2024, PNC filed an opposition to the TRO Motion, which largely incorporated the arguments in its motion to dismiss.   Dkt. No. 48.   This means, although the time to do so has now long passed, Levitz has failed to oppose the motion to dismiss.

With briefing now complete, this Order follows.

---

[1]*Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

## LEGAL STANDARDS

PNC moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Levitz, meanwhile, moves for a temporary restraining order, under Federal Rule of Civil Procedure 65.

## I. Federal Rule of Civil Procedure 12(b)(1)

A challenge to the Court's subject matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). Fed.R.Civ.P. 12(b)(1). "The *Rooker-Feldman* doctrine recognizes that federal district courts generally lack subject matter jurisdiction to review state court judgments." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923)). The Court, therefore, construes PNC's argument in this regard as one challenging the Court's subject matter jurisdiction under Rule 12(b)(1). *See Murray v. Dep't of Consumer & Bus. Services*, 2010 WL 3604657, at *9 n.4 (D.Or. Aug. 12, 2010) (applying Rule 12(b)(1) principles to a *Rooker-Feldman* argument).

When presented with an argument under Rule 12(b)(1), "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Where the court considers evidence outside

the pleadings for this purpose, "[n]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims."   *Id*.

## II.     <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a

claim upon which relief can be granted."   Rule 12(b)(6) is read in conjunction

with Rule 8(a), which requires "a short and plain statement of the claim showing

that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Pursuant to *Ashcroft

v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).   A court "must accept the factual allegations of the complaint as

true and construe them in the light most favorable to the plaintiff."   *Interpipe

Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-887 (9th Cir. 2018) (quotation

omitted).

Further, because Levitz is proceeding pro se, the Court liberally construes

his filings.   *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).   With that in

mind, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a

pro se litigant is entitled to notice of the complaint's deficiencies and an

opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). A court, however, may deny leave to amend where, *inter alia*, further amendment would be futile. *E.g.*, *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). As a result, herein, the Court takes judicial notice of the pleadings, court orders, and other public records that have been submitted in this case. *See* Fed.R.Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Bartolotti v. Maui Mem'l Med. Ctr.*, 2015 WL 4545818, at *3 (D. Haw. July 28, 2015) ("Matters of public record that may be judicially noticed include … documents filed with courts, 'both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'") (quoting *United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).[2]

---

[2]Specifically, the Court takes judicial notice of the following exhibits attached to the motion to dismiss: Dkt. No. 43-7 through Dkt. No. 43-26.

## III.    Temporary Restraining Order

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[3]

## DISCUSSION

The Court first addresses the arguments presented in PNC's motion to dismiss, followed, if necessary, by Levitz's TRO Motion.

## I.    *Rooker-Feldman*

PNC first relies upon the *Rooker-Feldman* doctrine for dismissal of Levitz's claims pursuant to Rule 12(b)(1).   The Ninth Circuit Court of Appeals has described the *Rooker-Feldman* doctrine as follows:

> *Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural

---

[3]The standards for a temporary restraining order and a preliminary injunction are substantially the same.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20.

rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).   "Essentially, the doctrine bars state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced from asking district courts to review and reject those judgments."   *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quotation omitted).   However, "[p]reclusion, not *Rooker-Feldman*, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify."   *Id*. at 614 (quotation and internal quotation omitted).

As described in the motion to dismiss, the State court foreclosure action involved Levitz's alleged failure to make timely payments on a note and mortgage securing the Property,[4] his alleged failure to cure said default, and PNC's foreclosure and sale of the Property.   *See generally* Dkt. No. 43-7 at 1-7; Dkt. No. 43-1 at 5-9.   On February 24, 2023, the First Circuit Court for the State of Hawaiʻi (First Circuit) found, among other things, that the mortgage on the Property was valid, and PNC was entitled to foreclose and sell the Property.   Dkt.

---

[4]The Property is located at 59-758 Kamehameha Highway, Haleʻiwa, Hawaiʻi, 96712.   Dkt. No. 11 at 2; Dkt. No. 43-7 at 2.

No. 43-13 at 7.   The same day, the First Circuit entered an interlocutory decree of foreclosure.   Dkt. No. 43-14.

In this light, here, the first two claims in the Amended Complaint, both of which ask this Court to find the mortgage "unenforceable" and/or "void", Dkt. No. 11 at 5-6, clearly seek to have this Court reject the First Circuit's contrary findings.   Put simply, the First Circuit could not have found the mortgage valid if it was also unenforceable or void.   Therefore, the claims for quiet title and declaratory relief are barred by *Rooker-Feldman*.   The same is true of the claim for breach of contract, which asks this Court to find that PNC "breached" the terms of the mortgage.   *Id*. at 9.   Again, the First Circuit could not have found that PNC was entitled to foreclose on the mortgage if PNC had breached the same. Therefore, the breach of contract claim is also barred by *Rooker-Feldman*.

## II.    Res Judicata

PNC also relies upon the principle of res judicata as a basis for dismissal of Levitz's claims pursuant to Rule 12(b)(6).[5]   Generally, res judicata precludes the

---

[5]The Court notes that, although res judicata is, ordinarily, an affirmative defense to be raised in a responsive pleading, rather than a motion to dismiss, the Ninth Circuit has explained that this is "not true when, as here, the defense raises no disputed issues of fact."   *Scott v. Kuhlmann*, 746 F.3d 1377, 1378 (9th Cir. 1984).   As discussed, here, Levitz has not opposed the motion to dismiss or otherwise disputed any of the facts set forth therein or the accuracy of the exhibits attached thereto.   As a result, the Court finds application of res judicata at this stage of the case to be appropriate.

litigation of claims or defenses that were or could have been litigated in a prior

lawsuit.    When the prior lawsuit is a State one, like here, "the federal court must

look to the res judicata principles of the state court in which the judgment was

rendered."    *Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996).    In Hawaiʻi, res

judicata (or, as it is also known, claim preclusion) "precludes not only the

relitigation of claims or defenses that were litigated in a previous lawsuit, but also

of all claims and defenses that might have been properly litigated, but were not

litigated or decided."    *Eastern Savings Bank, FSB v. Esteban*, 296 P.3d 1062,

1067 (Haw. 2013) (quotation omitted).    Ultimately -

> the party asserting claim preclusion has the burden of establishing that
> (1) there was a final judgment on the merits, (2) both parties are the
> same or in privity with the parties in the original suit, and (3) the
> claim presented in the action in question is identical to the one
> decided in the original suit, or to a claim or defense that might have
> been properly litigated in the first action but was not litigated or
> decided.

*Id*. at 1068.

First, as applied here, there was a final judgment on the merits of PNC's

claim for foreclosure and sale of the Property.    Specifically, on February 24, 2023,

the First Circuit entered the decree of foreclosure, which incorporated an order of

sale for the Property.    *See id*. at 1068 n.10 ("It is well established that under

Hawaiʻi law, foreclosure cases are bifurcated into two separately appealable parts:

(1) the decree of foreclosure and the order of sale, if the order of sale is

incorporated within the decree; and (2) all other orders.").    Thereafter, Levitz filed

a motion for reconsideration of the foreclosure decree, Dkt. No. 43-15, which, on

April 24, 2023, the First Circuit denied, Dkt. No. 43-16.    Therefore, pursuant to

Hawaiʻi Rule of Appellate Procedure 4(a)(3) (Rule 4(a)(3)), a 30-day clock to

appeal the foreclosure decree began ticking.    PNC asserts, and Levitz does not

dispute, that he did not appeal the foreclosure decree.    *See* Dkt. No. 43-1 at 7.

Therefore, pursuant to Rule 4(a)(3), the foreclosure decree became final on May

24, 2023.[6]

Second, the parties in this case and in the State foreclosure action are

undoubtedly the same because PNC and Levitz are (or were) parties in both.    Dkt.

No. 11; Dkt. No. 43-7.

Finally, this leaves the identity of the claims in the two actions.    As

discussed, in the State foreclosure action, PNC brought a claim for foreclosure and

sale of the Property.    In ruling on PNC's claim, the First Circuit found, among

other things, the mortgage and note to be valid, and PNC was entitled to

---

[6]The Court notes that, although PNC further asserts that Levitz filed a motion to "set aside" and a motion to "enjoin" the foreclosure decree, and these motions were "never ruled" upon by the First Circuit, Dkt. No. 43-1 at 7-8, neither a motion to "set aside" or "enjoin" a judgment are motions listed in Rule 4(a)(3) as tolling the start of the 30-day period to file a notice of appeal. Therefore, the Court does not find these motions relevant to the finality of the foreclosure decree.

13

foreclosure and sale of the Property.   In this action, Levitz brings nine claims. Beginning with the three claims discussed earlier in the context of *Rooker-Feldman*, they are clearly also barred by res judicata because, for example, the status of the Property's title and the validity or alleged breach of the mortgage were or could have been litigated in the State foreclosure action.

The next group of claims also could have been litigated in the State foreclosure action.   These three claims are: violation of the TILA for allegedly deficient disclosures concerning the origination and terms of the mortgage; negligent handling of the mortgage allegedly resulting in "clouded title"; and misrepresenting the alleged transfer of the mortgage resulting in "challenges in identifying the true holder of the mortgage…."   Specifically, these claims could have been litigated in the State foreclosure action because, at the very least, the alleged conduct arose out of the same transaction or series of transactions as PNC's lawsuit to enforce the mortgage and foreclose on the Property.   *See Eastern Savings Bank*, 296 P.3d at 1069 (concluding that claims under the TILA could have been raised in a foreclosure case as a counterclaim or affirmative defense, and citing *Pacific Concrete Fed. Credit Union v. Kauanoe*, 614 P.2d 936, 940 (Haw. 1980), for the proposition that alleged TILA disclosure violations "arose out of the same transaction" as a suit for enforcement of the underlying loan).

14

The final group of three claims involves alleged violations of the FCRA, the RESPA, and the FDCPA.   In these claims, respectively, Levitz alleges that (1) Defendants reported "negative information" about his credit, (2) Defendants failed to timely respond to his "written inquiries and disputes about the mortgage", and (3) Defendants engaged in "abusive" practices in collecting on the mortgage.   As discussed further below, these claims are conclusory and fail to state a plausible claim for relief at this time.   Nonetheless, perhaps in part due to the conclusory and unspecific nature of the claims, the alleged conduct may not arise out of the same transaction(s) as the origination and validity of the mortgage or the foreclosure and sale of the Property.   For example, as currently alleged, it is not clear whether reporting information about Levitz's credit arises out of the loan transaction such that it needed to be raised in the State action as a defense or counterclaim to PNC's foreclosure claim.   The same, on the current record, is arguably true with respect to the alleged failure to respond to written inquiries about the mortgage and alleged collection practices.   Put simply, while these claims easily may arise out of the same transaction as the State foreclosure action, at this juncture, it is not possible to ascertain, as a matter of law, that they do.[7]

---

[7]For the same reasons, it is not possible to determine, as a matter of law, whether these claims are "inextricably intertwined" with the foreclosure decree for purposes of *Rooker-Feldman*.

15

In summary, the Court finds that the following claims are barred by
principles of res judicata: (1) quiet title; (2) declaratory relief; (3) breach of
contract; (4) violations of the TILA; (5) negligence; and (6) fraudulent
misrepresentation.   Moreover, because those claims' identity with the claims
raised in the State foreclosure action cannot be cured by amendment, leave to
amend the same is denied, and the above-identified claims are DISMISSED WITH
PREJUDICE.

## III.   <u>Failure to State a Claim and Limited Leave to Amend</u>

PNC's final basis for dismissal is failure to state a claim pursuant to
Rule 12(b)(6).   The only remaining claims are those under the FCRA, the RESPA,
and the FDCPA, and, therefore, the Court's analysis in this regard is restricted to
those claims alone.   As discussed below, at the very least, each claim fails for lack
of specificity and/or being conclusory.

First, in the Amended Complaint, Levitz alleges that "Defendants" violated
the FCRA in reporting "negative" information to credit reporting agencies.   Dkt.
No. 11 at 7.   In doing so, Levitz does not allege what information was reported,
why that information was presumably false, or the provision of the FCRA that was
allegedly violated.   *See id*.   Liberally construing the same, given that Levitz
alleges that the Defendants "reported" credit information, the Court assumes that

16

Levitz intended to allege a violation of Sections 1681s-2(a) and (b) of the FCRA.
*See Douglass v. USAA Sav. Bank, Inc.*, 2016 WL 9185315, at *1 (C.D. Cal. July
18, 2016) (explaining that "the only FCRA sections related to 'furnishers of
information' are Title 28 U.S.C. §§ 1681s-2(a) and (b)….").

As for a claim under Section 1681s-2(a), this fails as a matter of law because
a private right of action does not exist under that provision.    *Nelson v. Chase
Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).    Section 1681s-
2(b), in contrast, provides for a private right of action.    *Id*. at 1060.    It imposes
various duties upon "furnishers" of information *after* they have received notice "of
a dispute with regard to the completeness or accuracy of any information provided
by a person to a consumer reporting agency…."    28 U.S.C. § 1681s-2(b)(1).
Further, all of the duties revolve around the furnisher conducting "an
investigation" of the disputed information.    *See id*. § 1681s-2(b)(1)(A)-(E).

In this light, the Amended Complaint clearly fails to state a claim under
Section 1681s-2(b).    As an initial matter, other than referring to *all* Defendants,
Levitz fails to identify *which* Defendants, such as PNC, allegedly violated the
FCRA.    Next, the Amended Complaint fails to identify any Defendant that was
provided the notice triggering the duties of Section 1681s-2(b)(1).    Next,
assuming that an investigatory duty was triggered, the Amended Complaint fails to

17

identify any deficiency with the same. Basically, the Amended Complaint fails in every fashion to allege a claim, let alone a plausible one, under Section 1681s-2(b).

Second, in the Amended Complaint, Levitz alleges that the "Defendants" violated the RESPA in failing to "properly handle inquiries and disputes" within a 60-day period Levitz says is required by the statute. Dkt. No. 11 at 7-8. To state a claim under the RESPA, a plaintiff must allege that a specific defendant (1) violated a provision of the statute, and (2) suffered actual damages as a result of the violation. *See Dandridge v. Select Portfolio Servicing, Inc.*, 2024 WL 2077783, at *2 (9th Cir. May 9, 2024) (affirming dismissal of RESPA claim alleging an untimely and incomplete response to the plaintiff's inquiry where the complaint "fail[ed] to plausibly allege that the [plaintiff] suffered any 'actual damages' as a result"); *Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL 3561821, at * 2 (N.D. Cal. June 8, 2015) ("To state a claim under RESPA, a plaintiff must allege that (1) a defendant violated RESPA; and (2) that defendant's violation caused the plaintiff monetary damages.").

Here, as with his FCRA claim (and other statutory claims), Levitz does not identify the provision(s) of the RESPA the Defendants allegedly violated. Liberally construing the Amended Complaint, the Court assumes that Levitz intended to bring a claim under Section 2605(e), which concerns the duties of loan

18

"servicers" in responding to borrower inquiries.   12 U.S.C. § 2605(e).   Section

2605(e) provides, among other things, that, after receiving a "qualified written

request" from a borrower for "information relating to the servicing" of a loan, a

"servicer" must provide a written response acknowledging receipt of the inquiry

and, thereafter, conduct an investigation and/or make corrections to the borrower's

account.   *Id*. §§ 2605(e)(1) & (2).   Further, should a borrower's qualified written

request relate to a "dispute regarding the borrower's payments," a servicer may not

provide information regarding any overdue payment related to the inquiry to a

consumer reporting agency for a period of 60 days.   *Id*. § 2605(e)(3).

In this light, the Amended Complaint again clearly fails to state a claim

under the RESPA.   As with his FCRA claim, Levitz fails to identify any *specific*

Defendant that violated any provision of the RESPA.   So it is clear, in any further

amended complaint Levitz may file, he must identify by name the *specific*

Defendant that violated the RESPA and how.   If Levitz believes that *every*

Defendant violated the statute, then he must allege each specific violation by each

Defendant independently of each other.   Next, assuming that the relevant

provision is Section 2605(e), other than a vague allegation of untimely responses to

unidentified inquiries, Levitz fails to allege any specific inquiry he made or

specific response that was deficient.   Next, Levitz fails to allege any "actual

damages" he suffered as a result of any alleged violation of the RESPA.

Therefore, this claim too fails in every fashion to allege a valid claim.

Third, in the Amended Complaint, Levitz alleges that the "Defendants"

violated the FDCPA through "abusive and deceptive practices" in collecting on the

mortgage.   Dkt. No. 11 at 8.   "There are four elements to an FDCPA cause of

action: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt

arises out of a transaction entered into for personal purposes; (3) the defendant is a

'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of

the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere

Credit of North America, LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing

*Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004)).

Here, once again, Levitz does not identify the provision(s) of the FDCPA the

Defendants allegedly violated.   Liberally construing the Amended Complaint, it

appears Levitz intended to bring claims under Section 1692e, concerning false or

misleading representations, or Section 1692f, concerning unfair practices.   Section

1692e prohibits a "debt collector" from using any "false, deceptive, or misleading

representation" in collecting a debt.   15 U.S.C. § 1692e.   Section 1692f prohibits

a debt collector from using "unfair or unconscionable means" to collect a debt.   15

U.S.C. § 1692f.

20

In this light, the Amended Complaint once again fails to allege a statutory claim.   As with his other such claims, Levitz again refers to the Defendants generally, without identifying how any specific Defendant violated any specific provision of the FDCPA.   This is inadequate and must be remedied in a similar fashion to that explained above in any further amended complaint that Levitz may file.   Next, other than alleging in conclusory fashion that communications or practices were "abusive and deceptive", Levitz does not allege any specific communication or practice or indicate how it was abusive or deceptive.   Such conclusory allegations are inadequate.   Should Levitz wish to amend this claim, along with plausibly alleging the other elements of an FDCPA claim, he must allege a specific representation or practice made by a specific Defendant.

## IV.    **TRO Motion**

As explained earlier, in order to be entitled to injunctive relief, the movant must show a likelihood of success on the merits.   *Winter*, 555 U.S. at 20.   For the reasons set forth above, Levitz has not come close to showing a likelihood of success with respect to *any* of his claims, and, importantly, with respect to any claim relating to enjoining the State foreclosure action—all such claims having been dismissed *with* prejudice.   As a result, the TRO Motion, Dkt. No. 37, is DENIED.

21

## **CONCLUSION**

For the reasons set forth herein, PNC's motion to dismiss, Dkt. No. 43, is GRANTED, and the TRO Motion, Dkt. No. 37, is DENIED.   The Amended Complaint, Dkt. No. 11, is DISMISSED WITH LIMITED LEAVE TO AMEND to the extent set forth herein.

Levitz may have until **January 3, 2025** to file a further amended complaint consistent with this Order.   In doing so, Levitz must designate it as the "Second Amended Complaint", may not incorporate therein any claim dismissed herein with prejudice, and may not assert any claim therein other than one based on the FCRA, RESPA and FDCPA, as described above.

IT IS SO ORDERED.

DATED: December 17, 2024 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge